[No. B202409. Second Dist., Div. Four. Sept. 16, 2008.]

VI DIMON, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Richard A. Jones; Gould & Associates, Michael A. Gould and Aarin A. Zeif for Plaintiff and Appellant.

Jones Day, Matthew M. Yu, Erica L. Reilley and Deborah C. Saxe for Defendant and Respondent.

OPINION

WILLHITE, J.—

## INTRODUCTION

In this lawsuit, a deputy probation officer employed by the County of Los Angeles (the County) alleges that the County has violated various provisions of the Labor Code, as well as wage orders promulgated by the Industrial Welfare Commission (IWC), by failing to provide deputy probation officers with meal periods and by failing to pay for the missed meal periods. The County demurred to the complaint contending that, as a charter county, it has exclusive authority to provide for the compensation and conditions of employment of its employees. In particular, the County noted that it had regulated compensation and employment conditions through a collective bargaining agreement which, among other things, contained an express provision governing meal periods for deputy probation officers. The trial court sustained the County's demurrer without leave to amend.

■ We affirm. As contended by the County (and as concluded by the trial court), the County has exclusive authority, as a charter county, to provide for the compensation and conditions of employment of its employees, and has done so with respect to probation officers through a collective bargaining agreement adopted by resolution. It is thus exempt from state statutes and regulations governing meal breaks.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Vi Dimon is a probation officer employed by the County. According to her first amended complaint, she brings this action on behalf of all current and former county probation officers who were not provided "with lawful meal periods" and "not paid the hour of pay for each meal period not provided."[1] She alleges that the County's actions violated Labor Code sections 512[2]

---

[1] The complaint also alleges that the County improperly denied rest periods to probation officers and did not pay them for those periods as required by law. The trial court rejected the claim, finding that it (as well as plaintiff's other claims) was barred by the home rule provisions of the California Constitution. Plaintiff's appellate briefs make no mention of her claim about denied rest periods. We therefore consider the claim abandoned and do not discuss it. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].)

[2] Labor Code section 512 provides: "(a) An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less

(prescribing meal periods) and 226.7[3] (providing a premium wage as compensation for missed meal periods) as well as (unspecified) wage orders promulgated by the IWC. The complaint seeks monetary damages and recovery of civil penalties (Lab. Code, § 2699 et seq.)[4,5]

A January 2006 memorandum of understanding (MOU) entered into by the County and the union representing deputy probation workers covers the subject of meal periods.[6] The pertinent provision of the MOU is section 7 of article 38. Entitled "Meal Time Coverage," it provides: "A. When Field Services personnel are assigned to duties of Officer-of-the Day, such employees will be relieved from that duty for their lunch period. Relief will be provided by Management. [¶] B. Camp and Juvenile Hall employees will be provided with meals if no meal time relief can be provided during the period of their working hours."

The trial court sustained the County's demurrer to plaintiff's complaint without leave to amend. The trial court found that the County, as a charter county, has exclusive authority to provide for the compensation and conditions of employment of its employees and therefore is exempt from the requirements of sections 226.7 and 512.

Plaintiff appeals from the judgment following the order of dismissal.

---

than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. [¶] (b) Notwithstanding subdivision (a), the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work if the commission determines that the order is consistent with the health and welfare of the affected employees."

[3] Labor Code section 226.7 provides: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

[4] All undesignated statutory references are to the Labor Code unless noted otherwise.

[5] Section 2699 is part of the Private Attorneys General Act of 2004 (PAGA). (§ 2698 et seq.) The cause of action for civil penalties is derivative of plaintiff's claim that the County violated section 512. PAGA "was adopted to empower aggrieved employees, acting as private attorneys general, to seek civil penalties for Labor Code violations, penalties which previously could be assessed only by state agencies." (*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 336 [47 Cal.Rptr.3d 614].)

[6] The trial court granted the County's request, made concurrent with its demurrer, to take judicial notice of the MOU.

## DISCUSSION

### 1. *Charter Counties and the Home Rule Doctrine*

The County is a charter county.[7] (L.A. County Charter, art. I, § 1.) Section 4 of article XI of the California Constitution reads, in pertinent part: "County charters shall provide for: [¶] . . . [¶] (f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attaches, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal."

Article III, section 11 of the County's charter reads: "It shall be the duty of the Board of Supervisors: (1) To appoint all County officers other than elective officers, and all officers, assistants, deputies, clerks, attaches and employees whose appointment is not provided for by this Charter. [¶] Except in the cases of appointees to the unclassified service, all appointments by the Board shall be from the eligible civil service list. The Board shall provide, by ordinance, for the compensation of elective officers and of its appointees, unless such compensation is otherwise fixed by this Charter. . . . [¶] (3) To provide, by ordinance, for the number of assistants, deputies, clerks, attaches and other persons to be employed from time to time in the several offices and institutions of the County, and for their compensation and the times at which they shall be appointed." (Fns. omitted.)

■ The state Constitution's express grant of authority to charter counties necessarily implies that the Legislature lacks the authority to provide for compensation of the County employees. (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285–286 [132 Cal.Rptr.2d 713, 66 P.3d 718].) In other words, the determination of wages to be paid to employees of charter counties "is a matter of local rather than statewide concern." (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 317 [152 Cal.Rptr. 903, 591 P.2d 1].) Consequently, "[w]hen a California County [such as Los Angeles County] adopts a charter, its provisions 'are the

---

[7] "The majority of California's 58 counties do not have charters. In those counties, the structure of county government is laid out in various statutes enacted by the Legislature and found in the state Government Code. Thirteen counties, [including Los Angeles County], do have charters, in which the structure of county government is provided for in the charter itself, subject to certain restrictions in the California Constitution and state statutes." (*People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 917 [131 Cal.Rptr.2d 274].)

law of the State and have the force and effect of legislative enactments.' [Citations.] Under the 'home rule' doctrine, county charter provisions *concerning the operation of the county*, and specifically including the county's right to provide 'for the number, compensation, tenure and appointment of employees' (that is, a county's core operations) trump conflicting state laws. [Citations.]" (*Holmgren v. County of Los Angeles* (2008) 159 Cal.App.4th 593, 601 [71 Cal.Rptr.3d 611]; see also *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 335 [34 Cal.Rptr.3d 635], citing Cal. Const., art. XI, § 4, subd. (g) [for the proposition that "a duly adopted county charter supersedes general laws adopted by the Legislature that concern counties"].)

## 2. *Curcini v. County of Alameda*

In *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629 [79 Cal.Rptr.3d 383] (*Curcini*), the court considered a claim very similar to the one advanced in this case. In *Curcini*, several county employees sued Alameda County—a charter county—for, among other things, violation of the state laws regarding meal periods. The plaintiffs relied, as does our plaintiff, on sections 226.7 and 512. The trial court sustained the County's demurrer without leave to amend. The appellate court affirmed that ruling, finding that the statutes providing for compensation for missed meal periods addressed matters of employee compensation that fell within Alameda County's exclusive constitutional purview as a charter county. The court explained:

■ "[Plaintiffs] contend that meal . . . break claims relate to working conditions and not to compensation. Considered in a vacuum, the argument seems plausible. However, [plaintiffs] are actually seeking monetary compensation for having been required to work through [their] meal . . . breaks. As [such], the link to compensation seems clear. As we have discussed above, our Supreme Court has recognized [in *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 56 Cal.Rptr.3d 880 [155 P.3d 284]] that in addition to the statutory language and its legislative history, the 'compensatory purpose of the remedy' provided in Labor Code section 226.7 for violations of meal . . . period regulations, 'compel the conclusion that the "additional hour of pay" (*ibid.*) is a premium wage intended to compensate employees . . . .' [Citation.]

"*In re Work Uniform Cases*[, *supra*,] 133 Cal.App.4th 328 . . . also recognizes that the 'compensation' within the purview of counties (both charter and noncharter) relates to a broader spectrum of activities than merely

setting salaries. Plaintiffs in *In re Work Uniform Cases* alleged that the defendants had violated the indemnification provisions of Labor Code section 2802 in failing to compensate them for the actual cost of purchasing, replacing, cleaning and maintaining required work uniforms. [Citation.] The trial court held with respect to city and county defendants that 'article XI of the state Constitution vests the power to prescribe the terms and compensation for employees with the city and county defendants . . . ,' and that interpreting the Labor Code to require payment for uniform purchase and maintenance 'would infringe on that constitutional delegation of power.' [Citation.] The court affirmed, rejecting the plaintiffs' argument that paying for the cost of an employee's uniform was distinct from setting the wages of public employees, as it was not dependent upon performing labor. [Citation.] The court concluded that payment for work uniforms was a 'part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits. The impact of this determination is that it places plaintiffs' claim of entitlement to compensation for uniform expenses as indemnification under section 2802 in direct conflict with a public entity's power to provide for compensation of its employees . . . .' [Citation.]

"Moreover, no case cited by the parties draws the type of distinction [plaintiffs] posit between compensation and working conditions with respect to the home rule provisions applicable to charter counties. [¶] . . . [¶]

■ "In sum, the provisions of [section 512] prescribing meal periods, and . . . [section 226.7] providing a premium wage as compensation for missed meal . . . periods, are matters of compensation within the county's exclusive constitutional purview. . . . [S]uch compensation matters are of local rather than statewide concern. [Citations.]" (*Curcini, supra,* 164 Cal.App.4th at pp. 644–645.)

*Curcini*'s reasoning applies with equal force to this case to bar plaintiff's lawsuit.[8] None of her contrary arguments, discussed below, are persuasive.

---

[8] *Curcini* was decided after proceedings concluded in the trial court and after the County filed its respondent's brief. Thereafter, the County filed a letter brief to call our attention to *Curcini* and to indicate that it intended to rely upon *Curcini* at oral argument. Plaintiff's reply brief addressed *Curcini*'s application to this case. Because we conclude *Curcini* controls, there is no need to discuss *Abbe v. City of San Diego* (S.D.Cal., Oct. 19, 2006, No. 05 Civ. 1629) 2006 U.S.Dist. Lexis 79010, the nonpublished federal district court decision relied upon by plaintiff both in the trial court and on appeal. (See *Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28, 34 [41 Cal.Rptr.3d 108] [Cal. Rules of Court, rule 8.1115, bars only citation of unpublished California opinions] and *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6 [42 Cal.Rptr.3d 283] [unpublished federal decisions can be cited as persuasive but not precedential authority].)

### 3. *The County's Approval of the MOU and Government Code section 25300*

Plaintiff argues that the "County failed to act by regulating meal periods, therefore the state law regulating meal periods applies." She relies upon the general principle that "a gap left by the terms of a county charter [can be filled] with the applicable provisions of general law." (*People ex rel. Kerr v. County of Orange, supra*, 106 Cal.App.4th at p. 925.) That principle does not apply here. The predicate of plaintiff's argument—that the County has failed to address the subject of meal periods—is incorrect. Contrary to plaintiff's suggestion, there is no requirement that a specific compensation provision be found in the County charter itself. (*Curcini, supra*, 164 Cal.App.4th at p. 646.) Instead, the matter can be addressed by ordinance or resolution. Government Code section 25300 provides: "The board of supervisors shall prescribe the compensation of all county officers and shall provide for the number, compensation, tenure, appointment and conditions of employment of county employees. [¶] Except as otherwise required by Section 1 or 4 of Article XI of the California Constitution, such action may be taken by resolution of the board of supervisors as well as by ordinance." (Hereafter section 25300.)

The legislative history of section 25300, furnished by plaintiff,[9] establishes that the statute was amended in 1974 to enable a board of supervisors to address employee compensation by ordinance *or* resolution instead of by ordinance only. For instance, the Senate Committee on Local Government explained: "The proposed legislation is intended to simplify salary and fringe benefit packages so that once they have been negotiated by the Board of Supervisors and employees and employee groups, they can be adopted by resolution rather than the more cumbersome method of an ordinance for some things and a resolution for others."[10]

That is precisely what happened here. As set forth earlier, the County entered into an MOU covering deputy probation officers. The MOU specifically covers meal periods. At a regular public meeting conducted on January 10, 2006, the County's Board of Supervisors unanimously voted to approve, pursuant to the recommendation of its Chief Administrative Officer, the

---

[9] Plaintiff's request that we take judicial notice of the legislative history is granted.

[10] Plaintiff does not quarrel with this conclusion. In fact, her opening brief states that section 25300 was amended "to allow the Board of Supervisors to act through either ordinance or resolution."

MOU. That approval was recorded in the minutes.[11] Hence, the County *has acted* such that there is no void in the County's compensation scheme to be filled by sections 226.7 and 512.[12] Because the County chose to address meal periods in a manner different than that found in the Labor Code, the home rule doctrine precludes application of any contrary statutory provisions.

Plaintiff attempts to avoid this conclusion through two distinct arguments.

■ First, she contends that section 25300 does not apply because the County did not approve the MOU by formal resolution. We disagree. "A resolution in effect encompasses all actions of the municipal body other than ordinances. . . . [A] resolution deals with matters of a special or temporary character; an ordinance prescribes some permanent rule of conduct or government, to continue in force until the ordinance is repealed. . . . [¶] Resolutions, as distinguished from ordinances, need not be, in the absence of some express requirement, in any set or particular form." (5 McQuillin, Municipal Corporations (3d rev. ed. 2004), § 15:2, pp. 84–85, 91, fns. omitted; see also *City of Sausalito v. County of Marin* (1970) 12 Cal.App.3d 550, 565 [90 Cal.Rptr. 843] [" 'A resolution is usually a mere declaration with respect to future purpose or proceedings of the board. An ordinance is a local law which is adopted with all the legal formality of a statute.' "]; 45 Cal.Jur.3d (2000) Municipalities, § 309, p. 12 [" 'Resolution' denotes something less formal [than an ordinance]. It is the mere expression of the opinion of the legislative body concerning some administrative matter for the disposition of which it provides. While an ordinance prescribes a permanent rule of conduct or of government, a resolution is, ordinarily, of a temporary character."].)

Here, the board of supervisors' approval of the MOU was, in effect, done by resolution. The approval was a declaration by the board that it agreed to the MOU's terms and that the County would be bound by those contractual terms for the period provided. Contrary to plaintiff's contention, "an actual formal resolution" is not required.[13] (See *Graydon v. Pasadena*

---

[11] We grant the County's request to take judicial notice of the minutes of the January 10, 2006, meeting of its board of supervisors indicating its approval of the MOU. (Evid. Code, § 452, subd. (c); *Cruz v. County of Los Angeles* (1985) 173 Cal.App.3d 1131, 1134 [219 Cal.Rptr. 661].)

[12] Pursuant to our request (Gov. Code, § 68081), the parties submitted letter briefs addressing the legal significance, if any, of the board of supervisor's approval of the MOU.

[13] Plaintiff's reliance upon Government Code sections 25333 (requiring public hearing before approving a contract) and 25335 (requiring an authorization by resolution of a contract) is misplaced. Those provisions appear in title 3, part 2, division 2, chapter 4.5 of the Government Code, enacted in 1992, that addresses only when and how a county can enter into contracts with private enterprises to provide services to the public.

*Redevelopment Agency* (1980) 104 Cal.App.3d 631, 641–642 [164 Cal.Rptr. 56] [the agency's award and authorization of a contract at a regular public meeting was the equivalent of a resolution]; *Smith v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 412, 416–417 [128 Cal.Rptr. 572] [a school board's acceptance of a written bid at a public meeting constituted the requisite approval of the contract because a motion, under those circumstances, is the equivalent of a resolution].)

Second, plaintiff claims that there is a constitutional impediment to the County's approval of the MOU by resolution. She points to the following italicized language in section 25300: "*Except as otherwise required by Section . . . 4 of Article XI of the California Constitution,* such action [providing for employee compensation] may be taken by resolution of the board of supervisors." (Italics added.) Plaintiff argues that section 4 of article XI precludes addressing employee compensation other than by ordinance. Again, we disagree.

In relevant part (as set forth earlier), article XI, section 4 of the California Constitution reads: "*County charters shall provide for:* [¶] . . . [¶] (f) The fixing and regulation by governing bodies [here, the board of supervisors], *by ordinance,* of the appointment and number of [employees], *and for* the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons." (Italics added.) Plaintiff argues that the reference, "by ordinance," applies to a board of supervisors' power to set employee compensation. In other words, she argues that the Constitution requires a board of supervisors to address issues of employee compensation solely through ordinance, so that section 25300's provision permitting action by resolution is of no effect.

■ We disagree with plaintiff's syntactic interpretation of the constitutional provision. We read it to require that the County Charter: (1) *provide for* the enactment by ordinance of the board of supervisors' power to address "the appointment and number of" employees; and (2) *provide for* the board of supervisors' power to address issues of employee compensation. As set forth earlier, article III, section 11, subdivision (3) of the County's Charter has complied with the constitutional mandate by giving its board of supervisors both of those powers.

■ Plaintiff's claim that the charter provision means that the County can address compensation issues *only* by ordinance is not persuasive. For one, it

suffers from the same syntactic failure as does her argument about the very similarly worded constitutional provision. For another, it ignores multiple charter provisions that clearly contemplate the County, through its board of supervisors, can act pursuant to the authority granted by state law, e.g., section 25300. For instance, article I, section 1 of the County Charter states that the County "has all the powers specified by the constitution *and laws of the State of California*" and article I, section 2 provides that the board of supervisors can exercise those powers when acting pursuant to the authority granted it by the charter. (Italics added.) Similarly, article III, section 10 provides that the board of supervisors "shall have all the jurisdiction and power which are now *or which may hereafter be granted by the* constitution and *laws of the State of California.*" (Italics added, fn. omitted.) In addition, article X, section 47 of the County Charter provides: "In fixing compensation to be paid to persons under the classified civil service, the Board of Supervisors shall be governed by applicable State statutes and County ordinances." (Fn. omitted.) In sum, these charter provisions make clear that the County, acting through the board of supervisors, is not limited to setting employee compensation by ordinance but can, in fact, avail itself of the other methods provided by state law, e.g., resolution as provided by section 25300.

### 4. *Collective Bargaining Agreements and Statutory Law*

Plaintiff also urges that "collective bargaining agreements are not exempt from the provisions of the Labor Code or the wage orders regulating meal periods." Plaintiff's authorities do not support her argument. First, she cites section 514. The statute provides that sections 510 and 511 governing overtime and alternative work schedules "do not apply to an employee covered by a valid collective bargaining agreement" if the agreement addresses those issues in a specified manner. Because section 514 does not preclude application of section 512 to employees covered by a collective bargaining agreement, plaintiff infers a legislative intent to "require union employees [such as herself] to receive meal periods in compliance with state law." We are not persuaded. This argument is nothing more than an attempt to make an end-run around the home rule doctrine, which bars application of contrary state law when a charter county has addressed a question of employee compensation.

Equally unpersuasive is plaintiff's reliance upon *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] (*Cicairos*). There, several employees sued their former employer, a warehousing business

that delivered groceries, for violation of IWC orders relating to, among other things, meal periods. (*Id.* at pp. 952, 955.) The employees were covered by a collective bargaining agreement which provided for lunch periods and mandatory arbitration of any grievance involving violation of the agreement's terms. (*Id.* at p. 955.) The employees did not seek to arbitrate their grievances about denial of lunch periods. The employer urged that the collective bargaining agreement barred any lawsuit about denial of meal periods because the employees were required to arbitrate those claims. (*Id.* at p. 959.) The appellate court rejected that argument, concluding that there was "no indication in the collective bargaining agreement of an intent to arbitrate statutory rights violations allegations" such as those made by the employees. (*Id.* at p. 960.)

In the course of its analysis, *Cicairos* also stated: "Arbitration is also not required simply because the provisions relating to meal periods and rest breaks in the collective bargaining agreement are almost identical or even more generous than under state law. *Since minimum statutory labor standards are at issue here, the parties could not waive the required meal periods or rest breaks.*" (*Id.* at p. 960 italics added.) Plaintiff relies upon the italicized sentence to urge that the MOU's provisions, approved by the County, cannot trump sections 512 and 226.7. We disagree. *Cicairos* involved a collective bargaining agreement entered into in the *private* sector (not the public sector) and thus has no relevance here. The issue still remains the application of the home rule doctrine and its effect on contrary state legislation when a charter county has provided for employee compensation. The italicized language in *Cicairos* (arguably dicta) does nothing to change that conclusion.

## 5. *Matters of Statewide Concern*

Plaintiff next relies upon the principle that the "Legislature may regulate as to matters of statewide concern even if the regulation impinges 'to a limited extent' [citation] on powers the Constitution specifically reserves to counties." (*County of Riverside v. Superior Court, supra*, 30 Cal.4th at p. 287.)

This argument makes no mention of section 226.7 (requiring monetary compensation for the failure to provide meal periods). Instead, the argument, as set forth in plaintiff's appellate briefs, relies only upon section 512 (prescribing meal periods). But section 512 does not create a cause of action for its violation. We therefore must assume that plaintiff is reading section 512 in conjunction with section 2699 which authorizes recovery of civil penalties for violations of labor laws. (See fn. 5, *ante.*) Such an argument tracks the

allegations of the second cause of action in her first amended complaint seeking recovery of civil penalties for the County's purported violations of section 512. In other words, plaintiff argues that section 512 reflects a statewide requirement to provide meal periods so that the County is liable for civil penalties for failing to implement the section's requirements. In particular, she claims that meal periods are a matter of statewide concern because they "increase worker safety." Plaintiff, however, has failed to make the showing required to invoke that principle.

Plaintiff did not raise this argument in the trial court. Her first amended complaint contains no allegations about "worker safety" and she offered no evidence to support such a claim. (Cf. *Los Angeles County Safety Police Assn. v. County of Los Angeles* (1987) 192 Cal.App.3d 1378, 1382, 1387 [237 Cal.Rptr. 920] [evidence offered in mandate proceeding conducted in the trial court to support claim that a state statute renaming county employees furthered several goals including officer safety, a matter of statewide concern; thus, home rule provision did not preclude application of state statute to the county employees].) Instead, in this appeal plaintiff relies upon language in *Murphy v. Kenneth Cole Productions, Inc., supra,* 40 Cal.4th 1094. *Murphy* addressed the appropriate statute of limitations for an employee claim, brought pursuant to section 226.7, for an additional hour of pay because the employee had been denied a mandated rest or meal period. *Murphy* held that the statute's remedy of one hour's pay constituted a wage, not a penalty, and thus was subject to a three-year statute of limitations (Code Civ. Proc., § 338), not a one-year statute of limitations (Code Civ. Proc., § 340). In the course of concluding that the remedy constituted compensation, *Murphy* made the following general observation upon which plaintiff now relies: "Employees denied their rest and meal periods face greater risk of work-related accidents and increased stress, especially low-wage workers who often perform manual labor." (*Id.* at p. 1113.) This statement does not support plaintiff's abstract argument that section 512 reflects a matter of statewide concern about worker safety as applied to deputy probation officers. Putting aside the fact that plaintiff has offered no evidence to support the argument, there clearly is a material distinction between a manual laborer denied *rest and* meal periods and a deputy probation officer denied a meal period.

■ Another factor to be considered in determining if a state law reflects a matter of statewide concern so that it applies to a charter county is whether the law is procedural or substantive. A procedural (state) law leaves the ultimate decision making authority about employee compensation, job qualifications, or reasons to terminate in the hands of the charter county and thus

can be applied to it. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 137–138 [185 Cal.Rptr. 232, 649 P.2d 874].) On that basis, our Supreme Court has upheld the application of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) to a charter city (*Baggett v. Gates, supra*, 32 Cal.3d 128) and has found that a charter city is required to comply with the meet-and-confer requirements found in Government Code section 3500 et seq. before proposing amendments to the city charter concerning the terms and conditions of public employment (*People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145]). A substantive law, on the other hand, takes away a charter county's ability to establish local salaries and control working conditions. (*County of Riverside v. Superior Court, supra*, 30 Cal.4th at p. 289.) Here, section 512 is substantive because it would divest the County of its ability to provide for and regulate meal periods and to prescribe the remedy (if any) for violation of its regulation(s). Thus, applying the statutes to the County would impinge to more than a limited extent on its authority as a charter county.

6. *Wage Orders*

 Lastly, we address the wage orders promulgated by the IWC. The IWC " 'is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California.' [Citations.]" (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581 [94 Cal.Rptr.2d 3, 995 P.2d 139].) As noted earlier, plaintiff's first amended complaint alleges that the County violated unspecified wage orders. During pleading litigation, she identified the applicable order as wage order No. 17-2001 which regulates miscellaneous employees. It requires a meal period after five hours of work and provides for payment of one hour of pay if a meal period is not provided. (Cal. Code Regs., tit. 8, § 11170, subd. 9(A), (C).) The County, on the other hand, claimed that plaintiff was covered by wage order No. 4-2001 which regulates professional, technical, clerical, mechanical and similar occupations. That order has a meal period provision essentially identical to wage order No. 17-2001 but it also includes a provision explicitly exempting all government employees from its application. (Cal. Code Regs., tit. 8, § 11040, subds. 11(A), (B) & 1(B).) We need not decide which wage order applies to deputy probation officers. Even were we to conclude that wage order No. 17-2001 controlled, the result would be the same: the home rule doctrine would preclude its application because the IWC, in promulgating wage orders, engages in a quasi-legislative endeavor (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702 [166 Cal.Rptr. 331, 613 P.2d 579]) so that its orders are inapplicable if, as here, they impermissibly regulate employment compensation, a matter within the County's exclusive constitutional purview.

## DISPOSITION

The judgment (order of dismissal) is affirmed.

Epstein, P. J., and Manella, J., concurred.

On September 30, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 14, 2009, S167769. George, C. J., did not participate therein. Moreno, J., was of the opinion that the petition should be granted.