Filed 1/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B296425<br><br>(Los Angeles County Super. Ct. No. BS173389) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.

Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski and Brian P. Ross for Plaintiff and Appellant.

Miller Barondess, Mira Hashmall, Andrew H. Dubin and Emily A. Sanchirico for Defendant and Respondent.

————————————————

## SUMMARY

The Association for Los Angeles Deputy Sheriffs (ALADS) sought a writ of mandate and declaration that a provision of the memorandum of understanding (MOU) between ALADS and the County of Los Angeles is unenforceable, on the ground it violates wage garnishment law and the Labor Code. In the provision at issue, the parties agreed on how paycheck errors would be corrected, including how overpayments to employees would be recovered by the county.

The trial court sustained the county's demurrer to the petition on the ground ALADS did not exhaust administrative remedies. We follow the analysis in an appellate case decided after the trial court's ruling in this case and conclude ALADS's administrative remedies are inadequate, so dismissal on that ground was improper. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2019) 42 Cal.App.5th 918 (*ALADS 2019*).) We further conclude, however, dismissal was proper because ALADS's petition does not state valid claims against the county. The home rule doctrine gives the county the exclusive right to regulate matters relating to its employees' compensation. The county's MOU with ALADS, approved by the board of supervisors, is a lawful exercise of that exclusive right, and the Labor Code provision at issue does not apply to a charter county. Consequently, ALADS cannot allege sufficient facts to state a cause of action.

## FACTS

ALADS is the recognized employee organization that represents sworn nonmanagement peace officers employed by the Los Angeles County Sheriff's Department. An MOU sets forth the understanding of ALADS and the county "regarding the

wages, hours and other terms and conditions of employment" of the covered employees.

Article 18 of the MOU governs "Paycheck Errors," including both "Underpayments" (part A) and "Overpayments" (part B). The "Overpayments" provision states: "1. Employees will be notified prior to the recovery of overpayments. [¶] 2. Recovery of more than 15% of net pay will be subject to a repayment schedule established by the appointing authority under guidelines issued by the Auditor-Controller. Such recovery shall not exceed 15% per month of disposable earnings (as defined by State law), except, however, that a mutually agreed-upon acceleration provision may permit faster recovery."

In April 2012, during conversion to a new payroll system, the county failed to apply an agreed-upon cap to certain bonus payments. This error resulted in salary overpayments to 107 deputies.

In May 2017, the county sent letters to the overpaid deputies, informing them of the overpayment, and giving them two repayment options: remitting payment in full, or repaying the amount through payroll deductions at a specified rate. A spreadsheet was enclosed with each letter, specifying the amounts overpaid, "dating back, in some cases, to April 2012."

ALADS's counsel wrote to the county, asserting the actions described in the May 2017 letters were unlawful. After a meeting, the county sent letters suspending its efforts to collect funds for 90 days so the parties could discuss a potential resolution. Apparently there was none, and on April 2, 2018, the county sent new letters stating it would deduct the overpayments as described in the May 2017 letters.

3

Beginning on May 15, 2018, the county began the paycheck deductions as described in the May 2017 and April 2018 letters.

Meanwhile, on April 19, 2018, ALADS filed its initial petition. After the trial court sustained a demurrer to ALADS's first amended petition, ALADS filed the operative second amended petition, alleging the facts we have described. Further, the petition alleged that, "[o]ut of an abundance of caution," grievances had been filed on behalf of the affected employees, challenging the unilateral deductions "in order to prevent the waiver of rights in the event that it was later determined that such actions were subject to the grievance procedure in the MOU."

The first and second causes of action, seeking declaratory relief and a writ of mandate, challenged the lawfulness of the county's deductions and sought to compel the county to comply with state laws and statutes of limitations. ALADS alleged the wage garnishment law (Code Civ. Proc., § 706.010 et seq.) provided the exclusive procedure for withholding an employee's earnings, and those earning are exempt from prejudgment attachment (§ 487.020, subd. (c)).

ALADS further alleged the deductions violated Labor Code section 221, which makes it unlawful "for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." The petition alleged the MOU "does not and could not lawfully authorize Defendants to unilaterally deduct from [the employees'] wages in order to recoup alleged overpayments." In the event the court were to hold otherwise, the petition alleged, the county failed to demonstrate that any amounts had been overpaid; in cases dating back to April 2012, a three-year statute of limitation

4

applied and had expired; and the overpaid employees were entitled to offsets for overpaid taxes. The petition also alleged administrative remedies were inadequate.

A third cause of action sought declaratory relief on the same bases, alleging the county had a "pattern and practice of unilaterally deducting the wages of ALADS-represented employees."

The county demurred, contending ALADS failed to exhaust its remedies under the MOU and those remedies were adequate. The county also asserted the petition failed to state valid claims, contending the home rule doctrine applied, Labor Code section 221 does not apply to the county, the MOU governs overpayments and recoupment, and the wage garnishment law does not apply. ALADS filed its opposition arguing to the contrary.

On January 29, 2019, the trial court sustained the county's demurrer without leave to amend on the ground ALADS failed to exhaust administrative remedies. The court granted judicial notice of a request for arbitration ALADS filed on behalf of one of its members, and also judicially noticed a November 26, 2018 letter from ALADS's attorney to the Employee Relations Commission stating "the parties have selected arbitrators for about 106 grievances." From the petition and judicially noticeable record, the court concluded the MOU provided an adequate administrative remedy to resolve the dispute at issue. The court rejected several other contentions raised by ALADS, including that the MOU remedies were inadequate because they did not allow for resolution of issues on behalf of an entire class of persons. The court was "not persuaded that a representative action by a union is functionally equivalent to a class action."

5

The court did not reach the county's arguments that ALADS did not allege sufficient facts to state a cause of action.

The court entered judgment of dismissal on February 20, 2019, and ALADS filed a timely notice of appeal.

Both parties have filed requests for judicial notice. The county requested judicial notice of its petition to confirm a November 21, 2019 arbitration award in favor of the county and against Deputy Sheriff Robert Harris, one of the overpaid employees, with exhibits including the MOU, the July 19, 2018 request for arbitration, and the arbitrator's award. ALADS requested judicial notice of Mr. Harris's "Response and Notice of Non-Opposition" to the county's petition to confirm the award, and of the trial court's September 11, 2020 ruling confirming the award. We grant both requests.

## DISCUSSION

### 1.   The Standard of Review

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) Plaintiff has the burden to show a

6

reasonable possibility the complaint can be amended to state a cause of action. (*Ibid.*)

## 2. Exhaustion of Remedies

### a. The legal principles

The principle that a party must exhaust administrative remedies before resorting to the courts has been described many times, including in *ALADS 2019*. The exhaustion doctrine " ' "is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." ' [Citation.] In addition, even if an administrative proceeding does not eliminate the need for a subsequent judicial action, it 'will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review.' " (*ALADS 2019, supra,* 42 Cal.App.5th at pp. 927–928.)

The exhaustion doctrine is subject to exceptions. "In particular, the doctrine does not apply when the available administrative remedy is inadequate or when it is clear that pursuing that remedy would be futile." (*ALADS 2019, supra,* 42 Cal.App.5th at p. 928.)

### b. *ALADS 2019*

ALADS argues its administrative remedy is inadequate for the same reasons described in *ALADS 2019*. There, the court found the remedy inadequate because it did not provide "classwide" relief. The same principle applies here.[1]

---

[1] Our conclusion the administrative remedy is inadequate makes it unnecessary to discuss ALADS's further argument that the dispute does not fall within the definition of a grievance. Nor

### i.     The grievance procedure

*ALADS 2019* involves the same MOU and grievance procedures that govern this case. Those procedures are described in detail in *ALADS 2019,* and there is no need to recite the details here. (See *ALADS 2019, supra,* 42 Cal.App.5th at pp. 925–926.) Suffice it to say that, after various informal and formal steps, grievances that "directly concern or involve the interpretation or application of the specific terms and provisions of [the MOU] and which are brought by an employee who was represented by ALADS in any steps of the grievance procedure may be submitted to arbitration." The decision of the arbitrator "shall be binding upon ALADS," and "[t]o the extent the decision and award . . . does not require legislative action by the Board of Supervisors," it is binding upon the county.

However, as *ALADS 2019* pointed out, "[i]t is undisputed that classwide relief is not available under the administrative procedures set out in the MOU." (*ALADS 2019, supra,* 42 Cal.App.5th at p. 930.) And here, as in *ALADS 2019,* it appears there is no dispute that, although the same issues "would arise in each individual grievance, a decision on that issue in one member's proceeding would not have any binding effect on other members' claims." (*Ibid.*)

### ii.     The *ALADS 2019* decision

In *ALADS 2019,* the complaint alleged the county failed to comply with compensation provisions in the MOU that required the county to match compensation increases given to other county

---

need we discuss ALADS's claim that it is not obligated to pursue the administrative remedies available to its members; *ALADS 2019* held otherwise, and ALADS has conceded the point in its reply brief.

8

safety employee unions. (*ALADS 2019, supra,* 42 Cal.App.5th at pp. 922–923.) The issues raised and the relief sought applied to all ALADS members. (*Id.* at p. 923.) Because the grievance procedures in the MOU "would require each of the thousands of individual ALADS members to pursue a grievance through arbitration to obtain the relief that ALADS seeks in this lawsuit, they are not adequate." (*Ibid.*; see *id.* at p. 930 ["such an onerous and time-consuming process precludes adequate relief"].) The court relied on such precedents as *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494. *Tarkington* concluded that, when a judicial action seeks relief on behalf of a class, "[i]f the [available administrative] remedies do not provide classwide relief, then no plaintiff need exhaust them before suing." (*Tarkington,* at p. 1510; *ALADS 2019,* at pp. 931–932.)

ALADS 2019 rejected the county's claim the case was not a class action, stating: "However, it is a representative action. Like the named plaintiff in a class action, ALADS seeks relief on behalf of a designated group of persons (i.e., its members). The form of the action is therefore not material. (Cf. [*Glendale City Employees' Assn., Inc. v.*] *City of Glendale* [(1975)] 15 Cal.3d [328,] 341 [the plaintiff's class allegations were 'superfluous,' because the plaintiff association, 'as the recognized representative of city employees, may sue in its own name to enforce the memorandum of understanding'].) The material issue is whether the relief available through the administrative process would apply to the class of employees that ALADS represents. It is undisputed that it would not." (*ALADS 2019, supra,* 42 Cal.App.5th at p. 932.)

### iii.    This case

The county does not contend *ALADS 2019* was wrongly decided.  The county instead asserts this case is distinguishable and *ALADS 2019* does not control, because this case involves only 107 members rather than all the members.  The county cites no authority and articulates no reason why that distinction makes a difference.  Nor have we found any such authority or any reason for a meaningful differentiation in this case.

In a class action, "[t]here is no set number required" to maintain the action, and the statutory test "is whether a class is so numerous that 'it is impracticable to bring them all before the court . . . .' " (*Hendershot v. Ready to Roll Transportation, Inc.* (2014) 228 Cal.App.4th 1213, 1223, italics omitted, quoting Code Civ. Proc., § 382.)  We see no reason why the same principle would not apply in the context of a representative action, where the number of members the union is representing is so numerous that bringing them all before the court is impracticable.

As we have seen, a union may bring a representative action on behalf of its members, and we have found no precedents suggesting this is so only when the entire membership is affected.  Quite the contrary.  (See *Anaheim Elementary Education Assn. v. Board of Education* (1986) 179 Cal.App.3d 1153, 1157, 1155 ["It is settled that '[a] labor union is entitled to represent its members in an action which is inseparably founded upon its members' employment' "; lawsuit sought relief for two temporary teachers and others similarly situated].)

We believe the number of affected employees here—107—is sufficiently numerous that, if this were a class action, the numerosity requirement would be met.  And, regardless of the size of the class, when the county disputes the precedential effect

10

of any individual arbitration decision and does not agree to be bound by any single arbitration, it would seem there is no adequate alternative to a representative court action.

We therefore conclude the rule stated in *ALADS 2019* applies. The relief available through the administrative process would not apply to the class of employees that ALADS is representing. As in *ALADS 2019*, "administrative relief is not adequate in a class or representative action if it does not apply to the class." (*ALADS 2019, supra,* 42 Cal.App.5th at p. 934.)

3.    **ALADS's Petition Does Not State Valid Claims Against the County**

"A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

As indicated at the outset, we conclude ALADS has not stated valid claims as a matter of law. This conclusion flows principally from the home rule doctrine. That doctrine gives the county—a charter county—the exclusive right to regulate matters relating to its employees' compensation. The county has done so through its MOU with ALADS, approved by the board of supervisors, lawfully governing (among other things) compensation and overpayments of compensation. Neither Labor Code section 221 nor the wage garnishment law renders the recoupment provision of the MOU unlawful.

We discuss below the various arguments and legal authorities ALADS proffers in opposition to this conclusion and explain why we find no merit in any of them.

11

### a. The home rule doctrine and Labor Code section 221

We begin with some general principles.

The California Constitution specifically reserves to counties (not just charter counties) the authority to provide for the compensation of their employees. (Cal. Const., art. XI, § 1, subd. (b), see also §§ 3 & 4.) "The constitutional language is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees. Although the language does not expressly limit the power of the Legislature, it does so by 'necessary implication.'" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 (*County of Riverside*).)

As mentioned earlier, Labor Code section 221 states that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." [2] But, "unless Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector." (*Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 733.) "[T]raditionally, 'absent express words to the contrary, governmental agencies are not included within the general words of a statute.' (*Wells v. One2One Learning Foundation* [(2006)] 39 Cal.4th [1164,] 1192.) The Legislature has acknowledged that

---

[2] Because we find Labor Code section 221 does not apply to the county, we do not address the county's alternative argument that the collective bargaining exception in section 224 takes this dispute over the MOU overpayment provision outside the scope of section 221.

this rule applies to the Labor Code." (*Johnson,* at p. 736; see *Stoetzl v. Department of Human Resources* (2019) 7 Cal.5th 718, 752 [" ' "Generally, . . . provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees." ' "].)

Two cases have expressly held that various sections of the Labor Code do not apply to charter counties under the doctrine of home rule.

*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629 (*Curcini*) explains that, among the powers specifically delegated to charter counties under section 4 of article XI of the California Constitution "is control over matters of employee compensation." (*Curcini,* at p. 640.) As *Curcini* observes, the Supreme Court has held that " 'the determination of the wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern.' " (*County of Riverside, supra,* 30 Cal.4th at p. 288, quoting *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 317; *Curcini,* at p. 641.)

*Curcini* concluded that Labor Code provisions on overtime, meal periods, and payment of a premium wage to compensate for missed meal and rest periods, "are matters of compensation within the county's exclusive constitutional purview. . . . [W]e agree with those cases that have concluded that such compensation matters are of local rather than statewide concern." (*Curcini, supra,* 164 Cal.App.4th at p. 645.)

*Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276 (*Dimon*) similarly held: "[T]he County has exclusive authority, as a charter county, to provide for the compensation and conditions of employment of its employees, and has done so

13

with respect to probation officers through a collective bargaining agreement adopted by resolution.  It is thus exempt from state statutes and regulations governing meal breaks." (*Id.* at p. 1279.)

*Dimon* elaborated:  "The state Constitution's express grant of authority to charter counties necessarily implies that the Legislature lacks the authority to provide for compensation of the County employees.  [Citation.]  In other words, the determination of wages to be paid to employees of charter counties 'is a matter of local rather than statewide concern.'  [Citation.]  Consequently, '[w]hen a California County [such as Los Angeles County] adopts a charter, its provisions "are the law of the State and have the force and effect of legislative enactments."  [Citations.]  Under the "home rule" doctrine, county charter provisions *concerning the operation of the county*, and specifically including the county's right to provide "for the number, compensation, tenure and appointment of employees" (that is, a county's core operations) trump conflicting state laws.' " (*Dimon, supra,* 166 Cal.App.4th at pp. 1281–1282, first & second brackets added.)

ALADS contends *Curcini* and *Dimon* do not apply, "because the issue here is *not* one of employee compensation," but rather a matter of statewide concern, whether an employer "may deduct from those wages without any legal process."  ALADS points out the state can regulate matters of statewide concern "even if they impinge to a limited extent upon some phase of local control" (*Baggett v. Gates* (1982) 32 Cal.3d 128, 139), and a "factor to be considered in determining if a state law reflects a matter of statewide concern so that it applies to a charter county is whether the law is procedural or substantive" (*Dimon, supra,* 166 Cal.App.4th at p. 1289).

14

ALADS contends Labor Code section 221 (and the wage garnishment law, discussed in more detail *post*) regulate only the methods by which the county may recover overpayments, and so this is a procedural matter that does not infringe on the county's home rule power over employee compensation. According to ALADS, the garnishment and attachment laws "provide the framework for how an employer may deduct wages from its employees to collect an alleged debt," and "leave the substantive ultimate decision making authority to the charter city or county as to whether and when to pursue recoupment for alleged debts owed by employees."

We are not persuaded. As *Curcini* put it, in the context of overtime, meal periods, and premium wage payment, "the link to compensation seems clear." (*Curcini, supra,* 164 Cal.App.4th at p. 644.) In our view, the recovery of overpayments of wages concerns the compensation of county employees no less than the payment of wages in the first instance. Therefore, the recovery of overpayments of wages is within the county's "exclusive authority, as a charter county" (*Dimon, supra,* 166 Cal.App.4th at p. 1279) to provide for compensation, and to do so (as in *Dimon*) through a collective bargaining agreement approved by the county board of supervisors.

Further, we observe that the State of California can recover overpayments of wages from state employees notwithstanding Labor Code section 221 and the wage garnishment law. Government Code section 19838 requires reimbursement to the state of overpayments made to state employees through a process similar to that in the MOU.[3] If the state can do it, we see no

---

[3] Government Code section 19838 states, in part: "(a) When the state determines an overpayment has been made to an

15

reason why a charter county should not be able to do likewise, by means of the MOU which was approved by the board of supervisors. In short, this is fundamentally a dispute about wages overpaid and their recoupment by payroll deductions, and these are matters properly and exclusively governed by the agreed and approved MOU.

ALADS asserts another rationale for its claim that Labor Code section 221 necessarily applies to charter counties, but it fails as well. ALADS points out that section 220 specifies a number of sections of the Labor Code that do not apply to public employees. Section 220, subdivision (a) lists sections that do not apply to the payment of wages to employees of the state, and subdivision (b) lists sections that do not apply to the payment of wages of employees of any county. The latter subdivision states, in part: "Sections 200 to 211, inclusive, and Sections 215 to 219, inclusive, do not apply to the payment of wages of employees

---

employee, it shall notify the employee of the overpayment and afford the employee an opportunity to respond prior to commencing recoupment actions. Thereafter, reimbursement shall be made to the state through one of the following methods mutually agreed to by the employee and the state: [¶] (1) Cash payment or payments. [¶] (2) Installments through payroll deduction to cover at least the same number of pay periods in which the error occurred. When overpayments have continued for more than one year, full payment may be required by the state through payroll deductions over the period of one year. [¶] (3) The adjustment of appropriate leave credits or compensating time off . . . . [¶] Absent mutual agreement on a method of reimbursement, the state shall proceed with recoupment in the manner set forth in paragraph (2)."

16

directly employed by any county, incorporated city, or town or other municipal corporation."  (§ 220, subd. (b).)

ALADS finds it "notable" that Labor Code section 221 is not listed in section 220, and concludes this means, under the statutory construction canon *expressio unius est exclusio alterius*, that section 221 *does* apply.  We do not see why that should be so, particularly as to a charter county.  The *Curcini* court found a similar argument not only weak but also beside the point.  Like the *Curcini* court, we find the question does not turn on principles of statutory interpretation but on the scope of the constitutional grant of power to the county.

*Curcini* said this:  "[T]he express recognition by Labor Code section 220, subdivision (b), that '[s]ections 200 to 211, inclusive, and [s]ections 215 to 219, inclusive, do not apply to the payment of wages of employees directly employed by any county . . .' provides no support for appellants' argument that Labor Code sections 510, 512, 226.7 and 1194 apply to counties, because they are not expressly made inapplicable by section 220.  The argument appears weak in any event, but to the extent it is based on a view of legislative intent, it is also beside the point." (*Curcini, supra,* 164 Cal.App.4th at p. 641, fn. 11; *ibid.* ["the question is not what was the Legislature's intent, but what is the scope of the constitutional grant of power to the county"]; accord, *California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646, 653–654 [rejecting claim that, because the Legislature expressly exempted public entities from specific Labor Code provisions referred to in subdivision (a) of section 220, the Legislature must have intended the entirety of the chapter on payment of wages to be generally applicable to public entities, referring to this as a "bald assertion," and finding

17

specific exemptions "cannot, by implication, be read as making" that entire chapter of the Labor Code generally applicable to public entities].)

ALADS further contends *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477 (*Hassey*) shows that Labor Code section 221 applies "even to charter cities and counties." We cannot agree.

In *Hassey,* the city of Oakland sued defendant Hassey, a police officer, for breach of an agreement he made to reimburse the city for the costs of his training if he left Oakland's police force after less than five years. (*Hassey, supra,* 163 Cal.App.4th at pp. 1482–1484.) The court concluded the reimbursement agreement was valid under federal and state law, but it was improper to withhold the defendant's final paycheck, because he was entitled to at least the statutory minimum wage under federal law. (*Id.* at pp. 1486, 1490–1493.)

As pertinent here, *Hassey* also concluded a triable issue existed as to whether the city's seizure of the defendant's final paycheck violated Labor Code section 221, since nothing in the record showed he agreed to the withholding of wages owed to him. (*Hassey, supra,* 163 Cal.App.4th at p. 1500.) The court observed that an MOU allowed the deduction of training costs from the employee's final paycheck, but section 224 of the Labor Code restricted the type of deductions permitted. (See fn. 2, *ante*.) Oakland is, as ALADS pointed out below by way of judicial notice, a charter city. But *Hassey* does not stand for the proposition that section 221 applies to charter counties. The issue of whether section 221 applied to a charter city (or county) was nowhere raised or discussed in *Hassey*. A case is not

18

authority for a proposition not even mentioned, much less discussed, in it.

### b. The home rule doctrine and the wage garnishment law

The same principles apply to ALADS's contention that the wage garnishment law makes the MOU provision on overpayments unlawful.

ALADS cites several cases that have held recoupment of salary overpayments by payroll deductions violated the wage garnishment law. These do not control here, where a charter county, not the state, has the exclusive right to regulate matters relating to its employees' compensation.

ALADS first relies on *California State Employees' Assn. v. State of California* (1988) 198 Cal.App.3d 374 (*CSEA*), a case that predated the statute requiring the state to recoup overpayments of salary. *CSEA* held that salary deductions by the State to recoup overpayments to state employees violated the then-recently-enacted (1983) wage garnishment law (Code Civ. Proc., § 706.010 et seq.). (*CSEA*, at p. 375.) The court noted that the wage garnishment law applies to public employees. (*Id.* at p. 377, fn. 3, citing § 708.720, subd. (b).)

*CSEA* was decided in 1988. In 1989, the state enacted Government Code section 19838. As discussed above, section 19838 requires reimbursement to the state of overpayments made to state employees, with payroll deduction as the default method if the parties do not agree. So, the proposition that the wage garnishment law "applies to public employees" no longer prevents a public employer—the state, at least—from recouping overpayments by payroll deductions.

19

ALADS answers this by saying that no state statute authorizes the county to do what the state does. That, of course, ignores the home rule principle we have already discussed at length. The county is a charter county, and its board of supervisors approved the MOU to which ALADS and the county agreed. Just as the state has authorized recoupment of overpayments to its employees, so has the governing body of the county.[4]

---

[4] The county points out that *Social Services Union v. Board of Supervisors* (1990) 222 Cal.App.3d 279 held a union could voluntarily agree through collective bargaining to collection of accumulated insurance premiums by way of payroll deductions, and the deductions "were not prohibited by the attachment and garnishment laws." (*Id.* at p. 286; see *id.* at p. 287 [observing that both the obligation to pay the increased premiums and the method of payment were a result of collective bargaining, and "[t]herefore, the payroll deductions did not constitute extrajudicial seizures condemned in *CSEA*"].) The *Social Services* court also rejected the union's alternative argument (like ALADS's here) that "the union cannot voluntarily waive its members' rights under the attachment and garnishment laws." (*Ibid.*) But the court appears to have done so on the basis that Labor Code section 224 expressly authorizes agreements for the payment of health care costs through payroll deductions. (*Social Services,* at p. 287.) Here, the county is a charter county and section 224 does not apply, so *Social Services* (which did not involve a charter county) is of limited relevance on this point. The court ultimately concluded that "[u]nder the circumstances presented here, public policy would not be promoted by limiting the County's recourse to the filing of individual lawsuits against each of its affected employees." (*Social Services,* at p. 288.)

ALADS next argues that a 2012 decision by the Public Employee Relations Board (PERB) "should be considered precedential," referring us to *Berkeley Council of Classified Employees v. Berkeley Unified School District* (2012) PERB Decision No. 2668 <https://perb.ca.gov/wp-content/uploads/decisionbank/2268E.pdf> [as of Jan. 25, 2021], archived at <https://perma.cc/9BV7-8UXD> (*Berkeley Council*). In that case, an expired collective bargaining agreement had a provision for recoupment of erroneous overpayments in salary, but the union declined to negotiate renewal of the provision, contending it improperly waived statutory rights and was a nonmandatory subject of bargaining. PERB agreed, concluding "the District's proposed recoupment procedure for wages allegedly overpaid to individual employees exceeds the ambit of negotiable exceptions to California's policy protecting employee wages from prejudgment attachment, and that the District's proposal is therefore a non-mandatory bargaining subject to which the parties had no right to agree in the first place as it was at variance from mandatory external law and thus nonnegotiable." (*Id.* at p. 11.)

*Berkeley Council* is not binding on this court, and we do not find it persuasive either, in the circumstances before us. For one thing, both the city and the county of Los Angeles are "expressly exempted . . . from PERB's jurisdiction." (*City of Los Angeles v. City of Los Angeles Employee Relations Board* (2016) 7 Cal.App.5th 150, 161.) More to the point, *Berkeley Council*'s conclusion that the state policy codified in the wage garnishment law (and in Labor Code sections 221 to 224) "establishes an inflexible standard and immutable provisions" (*Berkeley Council, supra,* at p. 9) seems contraindicated by state law allowing the

21

state to recoup overpayments (Gov. Code, § 19838, discussed *ante*). And, of course, *Berkeley Council* does not involve a charter county and does not address the home rule doctrine. *Berkeley Council* does not address whether Labor Code sections 221 to 224 apply to public employers in the first place. As we have concluded and discussed in the preceding part, those provisions do not apply to a charter county.

### c. Other contentions

ALADS also argues the MOU overpayments provision "does not authorize the County to unilaterally deduct wages," and does not permit the county to "deduct wages for alleged debts beyond any relevant statute of limitations." These arguments fail as well.

First, despite the constant repetition of the claim the county is acting "unilaterally," that is no more the case than for any other action taken under an MOU to which ALADS and the county both agreed. ALADS complains the overpayment provision does not use the word "deduction," and does not expressly say the county may recover overpayments without first bringing a legal proceeding to prove the overpayments. But the plain meaning of the overpayment provision is clear. We have already determined the overpayment provision is not unlawful, and we see no reason why it must be any more explicit than it is.

Second, ALADS contends that, even if the deductions are permitted, the three-year statute of limitations for mistake (Code Civ. Proc., § 338, subd. (d)) should apply, and the county's deductions dating to 2012 violate that limitation. ALADS cites no authorities, and is mistaken.

The county sought recoupment of the overpayments through the administrative process specified in the MOU, not in

22

a judicial action.  "[W]hen, as here, recoupment is obtained through an *administrative process*, rather than through a lawsuit filed in court, the statute of limitations does not apply."  (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 559; *id.* at p. 560 [where a retirement system "did not file a lawsuit to recoup the [pension] overpayments, but instead pursued recoupment through its own internal administrative process, it is not subject to a statute of limitations period set forth in the Code of Civil Procedure"]; see also 3 Witkin, Cal. Procedure (5th ed. 2020) Actions, § 430 ["The general and special statutes of limitation referring to actions and special proceedings are applicable only to judicial proceedings; they do not apply to administrative proceedings."].)  They likewise do not apply to the overpayment procedure in the MOU.

## DISPOSITION

The judgment is affirmed.  The county shall recover costs on appeal.

GRIMES, Acting P. J.

WE CONCUR:

STRATTON, J.            OHTA, J.*

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

23